**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYVLANIA**

| | | |
|---|---|---|
| DANIEL M. CARR, | : | |
| Plaintiff, | : | No. |
| v. | : | |
| COMMUNITY COLLEGE OF ALLEGHENY COUNTY and QUINTON BULLOCK, individually and in his official capacity, | : | **JURY TRIAL DEMANDED** |
| Defendants. | : | |

# COMPLAINT

Plaintiff Daniel M. Carr ("Mr. Carr") hereby file this Complaint as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. (the "ADEA"), Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000, *et seq*. ("Title VII"), the Fourteenth Amendment to the United States Constitution under the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983 ("Section 1983"), Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended ("Section 1981"), as well as 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). This Court has supplemental jurisdiction over the state law claims brought pursuant to the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951, *et seq*. (the "PHRA") under 28 U.S.C. § 1367.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) because each claim arose in the Western District of Pennsylvania and because Mr. Carr resides in this District.

## PARTIES

3. Mr. Carr is an adult individual residing in the Western District of Pennsylvania. At all relevant times, Mr. Carr was over 40 years of age. Mr. Carr is Caucasian.

4. Defendant Community College of Allegheny County ("CCAC") is an institution of higher learning with a principal place of business at 800 Allegheny Avenue, Pittsburgh, Pennsylvania 15233. At all relevant times, CCAC was acting by and through its duly authorized administrators, agents and/or employees, who at all relevant times were acting within the course and scope of their employment, under the color of state law, and/or in accordance with CCAC's policies, customs and practices.

5. Defendant Quinton Bullock ("Bullock") is an adult individual residing in the Western District of Pennsylvania. At all relevant times, Bullock was the President of CCAC and the final decisionmaker for CCAC. At all relevant times, Bullock was acting within the course and scope of this employment, under the color of state law, and/or in accordance with CCAC's policies, customs and practices. Bullock is African American.

## EXHAUSTION

6. Mr. Carr exhausted all necessary administrative remedies before the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

## FACTS

7. CCAC employs more than 20 employees.

8. Mr. Carr became employed by CCAC as a full-time Senior Auditor in 1983, and he was promoted to Director-Internal Audit in 1996.

9. As Director-Internal Audit for CCAC, Mr. Carr was responsible for conducting all kinds of internal investigations at CCAC and was considered the only "college auditor" at CCAC.

10. During his employment, and except as identified below, Mr. Carr always received at least satisfactory performance reviews and served as a Cabinet member for CCAC from 2000 until Bullock removed him from that position entirely in 2018.

11. During his employment, and except as identified below, Mr. Carr was never disciplined or the subject of any discipline by CCAC.

12. Bullock became the President of CCAC in 2014.

13. Since becoming the President of CCAC, Bullock has been the subject of numerous charges of employment discrimination for reverse-race and age discrimination (among other charges of discrimination) since 2015.

14. Since becoming the President of CCAC, Bullock has replaced multiple Caucasian employees with less qualified African American employees and less qualified younger employees.

15. Since becoming the President of CCAC, Bullock has treated Caucasian employees differently in their employment, subjecting them to negative terms and conditions such as discipline when African American employees were not disciplined for the same or similar conduct.

16. Bullock has also been the subject of numerous claims of retaliation and has a reputation at CCAC for retaliating against those offering an opinion different from his own, participating in proceedings concerning allegations of his unlawful behavior, or otherwise lawfully complaining about his behavior.

17. Around late 2016 or early 2017, Mr. Carr was identified as a witness in two different employment discrimination cases by CCAC employees against Bullock, alleging, among other things, reverse-race and age discrimination and retaliation against them by CCAC and Bullock.

18. These two cases involved Nancilee Burzachechi ("Burzachechi") and Mary Francis Archey ("Archey"), both of whom are Caucasian and over the age of 40.

19. Paul Schwartzmiller ("Schwartzmiller"), a Caucasian male, was demoted by Bullock from his position as Vice President of Human Resources after he became involved as witness in investigating their claims.

20. Burzacechi, Archey and Schwartzmiller were all replaced by either less qualified African American employees, less qualified younger employees, or both.

21. In May 2017, the EEOC issued its findings of probable cause in each of the foregoing employment discrimination charges against CCAC and Bullock, thereby substantiating claims of employment discrimination and retaliation against them.

22. Those cases were referred to United States Department of Justice in September 2017 and, at least in late 2017, Bullock became aware that Mr. Carr was interviewed as a potential witness to the unlawful employment practices that were alleged to have been committed by him.

23. Thereafter, Bullock began treating Mr. Carr differently by negatively affecting the terms and conditions of his employment and otherwise acting toward him in an intimidating and threatening way.

24. On March 12, 2018, Bullock demoted Burzachechi and Archey for the second time.

25. Burzachechi was ultimately terminated, Archey was constructively discharged, and Schwartzmiller were constructively discharged.

26. Around the same time, on March 29, 2018, Mr. Carr complained to CCAC's Board of Trustees that he believed that Bullock was unlawfully intimidating, discriminating and retaliating against him for a variety of reasons, including, but not limited to, his participation as a witness in the foregoing EEOC matters against Bullock, and because of his race and age.

27. In the time preceding this complaint,

a. Bullock consistently told Mr. Carr that, "he should consider retirement," and that, "he was getting close to retirement," intentionally referring to his age as being an impediment to his employment;

b. Bullock stated directly to Burzachechi that, "she was too old to understand the new student population at CCAC," and stated directly to Archey that, "she was too old to understand the new technology," intentionally referring to their age as being an impediment to their employment;

c. Bullock consistently criticized Caucasian faculty members for the declining enrollment rates at CCAC, while intentionally failing to criticize African American faculty who had even worse declining enrollment rates at their respective campuses; and

d. Bullock began subjecting Mr. Carr to corrective measures for travel reimbursements and vouchers for which Mr. Carr declined to authorize payment, while African American employees who similarly declined such payments were not subject to any corrective measures.

28. On March 31, 2018, Mr. Carr wrote a letter to the EEOC describing the unlawful discrimination and retaliation against him by Bullock and CCAC.

29. On June 28, 2018, despite his position as Director-Internal Audit, and as part of an ongoing pattern of discrimination and retaliation against him, Bullock unilaterally removed Mr. Carr from all budgetary matters concerning CCAC.

30. On July 2, 2018, Bullock prepared a performance review for Mr. Carr, stating that he "needs improvement," a review that Mr. Carr had never received before in his 35-year career with CCAC.

31. No other similarly situated African American or younger employee at CCAC received such a performance review from Bullock, but other Caucasian employees over the age of 40 like Burzachechi and Archey also received negative reviews from Bullock.

32. On July 9, 2018, Mr. Carr dual-filed a charge for employment discrimination with the EEOC, asserting discrimination because of his race (Caucasian) and age (over 40), and retaliation for being a witness in an employment discrimination matter involving other CCAC employees who were Caucasian and over the age of 40.

33. In September 2018, Mr. Carr was unexpectedly placed on paid administrative leave after being falsely accused by Bullock of using his work computer to access prohibited pornographic websites during the time period from 2011 to 2014 and in 2018.

34. At the time that Bullock made this accusation against Mr. Carr, he was aware—and all other relevant CCAC employees, agents and/or representatives were aware—that Mr. Carr, in his capacity as the Director-Internal Audit for CCAC, investigated four different CCAC employees from 2011 to 2014 for accessing pornographic websites while at work, two of which involved child pornography.

35. At the time that Bullock made this accusation against Mr. Carr, he was aware—and all other relevant CCAC employees, agents and/or representatives were aware—that Mr. Carr's investigation involving pornographic websites while at work resulted in criminal charges and terminations of employment against those employees.

36. With respect to this false accusation, Bullock directed others to access Mr. Carr's work computer, review the computer's history concerning the pornographic websites from 2011 to 2014 by clicking through those websites to create a recent history, and then falsely report that Mr. Carr repeatedly accessed pornographic websites in 2018.

37. On October 24, 2018, a forensic report from an independent information technology company proved that Bullock's accusations against Mr. Carr were false and fabricated.

38. This report was provided to CCAC and Bullock.

39. Mr. Carr was terminated on October 29, 2018.

40. At the time of his termination, Bullock falsely publicized to employees, agents and/or representatives of CCAC, as well as others, that Mr. Carr was terminated because he was looking at internet pornography while at work using his work computer.

41. These false and defamatory statements about Mr. Carr in connection with his termination tarnished the good-standing reputation that he earned over his 35-year career with CCAC.

42. Mr. Carr subsequently dual-filed a second charge of employment discrimination and retaliation with the EEOC.

**COUNT I**

**"Stigma-Plus" Violation under the Fourteenth Amendment Pursuant to Section 1983**

**(Mr. Carr v. Bullock, in his individual and official capacity)**

43. All paragraphs herein are incorporated by reference.

44. Bullock defamed Mr. Carr in the course of terminating him by falsely stating to others that Mr. Carr was being terminated for accessing internet pornography at work, thus tarnishing the good-standing reputation that Mr. Carr earned over his 35-year career with CCAC.

**COUNT II**

**Retaliation in Violation of Section 1981**

**(Mr. Carr v. Bullock and CCAC)**

45. All paragraphs herein are incorporated by reference.

46. Bullock terminated Mr. Carr's employment after he engaged in protected activity by formally and informally complaining of race discrimination at CCAC, and after he engaged in protected activity by participating in good faith in an investigation relating to claims of race discrimination made by other Caucasian employees at CCAC against Bullock.

**COUNT III**

**Race Discrimination in Violation of Section 1981**

**(Mr. Carr v. Bullock and CCAC)**

47. All paragraphs herein are incorporated by reference.

48. As a direct or proximate result of the conduct described herein, Mr. Carr's employment was terminated and his Caucasian race was a motivating and/or determinative factor in Bullock's decision to terminate his employment.

**COUNT IV**

**Retaliation in Violation of Title IV**

**(Mr. Carr v. CCAC)**

49. All paragraphs herein are incorporated by reference.

50. Bullock terminated Mr. Carr's employment after he engaged in protected activity by formally and informally complaining of discriminatory employment practices that were being committed by Bullock, and after he participated as a witness in investigations concerning allegations of discriminatory employment practices that were being committed by Bullock.

**COUNT V**

**Race Discrimination in Violation of Title VII**

**(Mr. Carr v. CCAC)**

51. All paragraphs herein are incorporated by reference.

52. As a direct or proximate result of the conduct described herein, Mr. Carr's employment was terminated and his Caucasian race was a motivating and/or determinative factor in Bullock's decision to terminate his employment.

**COUNT VI**

**Age Discrimination in Violation of the ADEA**

**(Mr. Carr v. CCAC)**

53. All paragraphs herein are incorporated by reference.

54. At all relevant times, Mr. Carr was over the age of 40, qualified to perform the essential functions on his job as Director-Internal Audit, yet he was terminated from his employment at the same time that other employees at CCAC who were over the age of 40 were being terminated without cause and replaced with younger, less qualified employees.

**COUNT VII**

**Race Discrimination in Violation of the PHRA**

**(Mr. Carr v. Bullock and CCAC)**

55. All paragraphs herein are incorporated by reference.

56. For all the same reasons described in Count V above, Bullock and CCAC discriminated against Mr. Carr because of his race in violation of the PHRA.

**COUNT VIII**

**Age Discrimination in Violation of the PHRA**

**(Mr. Carr v. Bullock and CCAC)**

57. All paragraphs herein are incorporated by reference.

58. For all the same reasons described in Count VI above, Bullock and CCAC discriminated against Mr. Carr because of his age in violation of the PHRA.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Carr requests that this Court grant the following relief where applicable:

a. That Bullock and CCAC be required to compensate him for back pay, front pay and other damages in the form of lost wages, and lost or reduced benefits, with interest until the date of any verdict as to be determined at trial;

b. That Bullock and CCAC compensate him for all other applicable compensatory damages in an amount to be determined at trial;

c. Liquidated damages in an amount to be determined at trial;

d. Punitive damages in an amount to be determined at trial;

e. Attorney's fees and costs; and

f. All other relief this Court deems just and proper.

Respectfully submitted,

THE LAW OFFICES OF TIMOTHY P. O'BRIEN

/s/ Alec B. Wright
Alec B. Wright
Pa. ID No. 316657

Henry W. Oliver Building
535 Smithfield Street, Suite 1025
Pittsburgh, PA 15222
(412) 232-4400
abw@obrienlawpgh.com

*Counsel for Plaintiff*